## HOME INSULATION CO. et al. v. HOME & BUILDING INSULATION CO.

No. 25365. Nov. 5, 1935.

Rehearing Denied Jan. 7, 1936.

Chas. L. Yancey, G. C. Spillers, Donald L. Brown, and E. M. Calkin, for plaintiffs in error.

F. V. Westhafer, for defendant in error.

PHELPS, J. For several years Johns-Mannville Corporation and Johns-Manville Sales Corporation, New York and Delaware corporations, engaged in manufacturing, advertising, and selling insulation materials for homes and other buildings under the trade name Home Insulation Company, which trade name they used in the various states of the Union and in connection with their national advertising program, in which they spent some $200,000 in newspapers, magazine and radio advertising.

It appears that in promoting their business they made contracts or granted franchises to dealers in the various trade territories covered by them, generally requiring the dealers to incorporate under the name of Home Insulation Company, under the laws of the state in which it operated, and gave this dealer the exclusive sale of its products.

The contract or franchise covering the trade territory of Oklahoma and Kansas was held by a Kansas corporation known as Home Insulation Company. This corporation made a contract with E. A. Shaw and B. E. Sanders as copartners, of Tulsa, Okla., to advertise and sell the products of Johns-Mannville Company in the Tulsa territory; the said Home Insulation Company (the Kansas corporation) furnishing the finances to operate said business in the Tulsa territory. Shaw and Sanders, though partners, operated under the name of Home Insulation Company, and it appears that they entered upon said enterprise with energy and advertised and sold these products in that territory as the Home Insulation Company. Their contract with the Kansas corporation having expired, they sought to renew the same, but being unable to do so, they organized a corporation and procured a char-

ter under the name of Home & Building Insulation Company. The incorporators were E. A. Shaw, B. E. Sanders, and Wm. F. Muir, the latter being an employee and salesman of Shaw and Sanders while they operated as Home Insulation Company.

The new corporation immediately entered upon a campaign of advertising and selling a similar product manufactured by the Eagle Picher Company, a competitor of the Johns-Mannville Company. Immediately thereafter Muir withdrew from the Home & Building Insulation Company and entered into a contract with and was granted a franchise by the Johns-Mannville interests to advertise and sell its products in the Tulsa trade territory, using the name Home Insulation Company, the same as that formerly used by Shaw and Sanders, copartners while they sold the same materials. These two corporations, it appears, became competitors and the evidence shows that the Home & Building Insulation Company expended about $1,700 in advertising and the Home Insulation Company spent about $2,000 for the same purpose.

After much confusion in the business of the two corporations because of the similarity of their names, the Home & Building Insulation Company, defendant in error here, filed its action in the district court of Tulsa county against Home Insulation Company and the individuals constituting the corporation, claiming that it had the right to transact its business under its corporate name to the exclusion of defendant and prayed for an injunction preventing defendant from using its corporate name in that trade territory.

Johns-Mannville Corporation and Johns-Mannville Sales Corporation intervened and alleged that for years Home Insulation Company was the trade-name under which it had conducted its business and extensively advertised and sold its products, and prayed that Home & Building Insulation Company be prohibited from using that name because of its similarity to that adopted and used for many years by interveners. In its cross-petition defendant joined in this prayer. Judgment was for plaintiff granting its prayer for injunction and denying the prayer of defendant and interveners for injunction against plaintiff, and defendant and interveners appeal.

The parties will be referred to herein as they appeared in the trial court.

Defendant and interveners present their contention under a single proposition of law, as follows:

"A corporation may not adopt as its corporate name the trade-name of a competitor operating and advertising in the same trade territory, which trade-name had been used prior to the date of the incorporation."

This court has not often been called upon to consider the question here presented. However, a very similar state of facts was considered by us in Red Seal Refining Co. v. Red Seal Refining Corp., 115 Okla. 63, 241 P. 762. In that case the Red Seal Refining Corporation was a foreign corporation which ultimately became domesticated in Oklahoma. A short time prior thereto, however, the Red Seal Refining Company was organized and procured a charter to transact business in Oklahoma. The Red Seal Refining Corporation filed its injunction action in the district court of Oklahoma county, and from a judgment in its favor, the Red Seal Refining Company appealed to this court and the judgment of the trial court was affirmed. In the body of the opinion in that case we find the following language:

"It may be stated at the outset that the authorities generally hold that a foreign corporation may maintain an action in a court of equity to restrain a domestic corporation from infringing its corporate name. Atlas Assurance Co. v. Atlas Insurance Co. (Iowa) 112 N. W. 232; United States L. & H. Co. of Maine v. United States L. & H. Co. of New York, 181 F. 182. In the case of Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 F. 94, it is said in the opinion: 'First, as to the imitation of the complainant's name. The fact that both are corporate names is of no consequence in this connection. They are the business names by which the parties are known, and are to be dealt with precisely as if they were the names of private firms or partnerships. The defendant's name was of his own choosing. and, if an unlawful imitation of the complainant's, is subject to the same rules of law as if it were the name of an unincorporated firm or company. It is not identical with the complainant's name. That would be too gross an invasion of the complainant's right. **Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another.** What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law.'

"It is contended that the evidence shows that the doing of such business, by which the plaintiff claims a priority of use under

its trade-name of 'Red Seal Refining Corporation,' was in violation of the laws of the state of Oklahoma, and that at the time the plaintiff obtained the right to lawfully do business in this state, the defendant was already using the name at its filling station in connection with its business, and hence defendant's lawful use of the name was first in time, and that plaintiff is an interloper and not entitled to any relief. Two decisions of this court: Myatt v. Ponca City Land & Improvement Co., 14 Okla. 189, 78 P. 185, and Lafferty v. Evans, 17 Okla. 247, 87 P. 304, are cited in support of defendants' proposition. In the Myatt Case, supra, the charter was issued by the state of Kansas for the sole purpose of buying and selling real estate in Oklahoma Territory. The charter granted no right within the state of Kansas. In the opinion it is said: 'Corporations are created for some purpose other than the mere exercise of creative power, and consequently when a corporation is attempted to be created without giving to it any power to act in the state of its creation, it can exercise none in any foreign country.' The case relied on has, we think, no application to the instant case. In the present case the plaintiff corporation was created by a charter issued by the state of Delaware. An examination of plaintiff's charter incorporated in the record clearly shows it was authorized to do business within the state of Delaware to the same extent and for the same purposes for which it seeks a license within the state of Oklahoma. In other words, the plaintiff corporation was possessed of the right. power, and privilege in the state of its domicile which was granted it in the state of Oklahoma.

"The validity of this same Kansas charter involved in the Myatt Case, supra, was again considered in the case of Lafferty v. Evans, supra, cited by defendants. The court followed the same rules announced in the Myatt Case above referred to.

"Defendant also cites Land Grant Ry. Co. v. Board of County Commissioners. 6 Kan. 245. The Kansas court held as follows: 'From the only territory in the whole world, over which the state of Pennsylvania has any jurisdiction or control, and in which it could authorize a corporation to have an office, or to do business. it excludes this corporation: that the attempt on the part of the state of Pennsylvania to authorize this corporation to have an office, or to do business anywhere else except in the state of Pennsylvania, is ultra vires, illegal, and void.' "

We quote at length from the opinion of this court in that case for the reason that it is indicated in plaintiff's brief in the instant case that it relies, at least to a certain extent, upon the fact that the interveners were not incorporated in Oklahoma and not licensed to transact business as a corporation in this state, and therefore not entitled to maintain an action to protect its trade-name from infringement, and our numerous citations above, at least to a certain extent, refute this contention. Also in the same opinion the following language is used:

"The defendant was free to take any unappropriated name it might choose, but it elected to take plaintiff's name, or one so similar to it as to mislead and deceive those having business relations with the plaintiff, 'Red Seal Refining Corporation.' "

This question was again considered by this court in Flora v. Flora Shirt Co., 141 Okla. 58, 283 P. 1013. In that case the Flora Shirt Company filed its injunction action in the district court of Oklahoma county when defendant attempted to use the name Flora, Carl, Shirt Company. From a judgment in favor of plaintiff, defendant appealed, and in disposing of the appeal we used this language:

"* * * It is the contention of the plaintiff that while Carl Flora has an absolute right to use his own name or to transact business under an artificial name, with the limitation that he may not resort to unfair competition, under the facts in this case, it shows that he intended to transact business and to form the corporation for the purpose of deceiving the public, and to simulate the name of Flora Shirt Company, and to thereby profit from the good name which that company bears in the state of Oklahoma and surrounding territory; and further, that the use of the name as shown by the petition was intended by Carl Flora to injure plaintiff's business.

"It is well settled in this state, as well as many others, that any one, in the absence of a self-imposed restriction, has an absolute right to use his own name honestly and reasonably in his own business, even though the use of the name may cause an injury to another person in the same business having the same name. But he cannot use his name in such a way that it plainly appears that he has resorted to some contrivance or artifice which is intended to produce an impression upon the public that his establishment, business or firm, or the goods which he is selling, are the same as that of another, and thus produce injury beyond that which results from similarity of the names. Hofstra Co. v. Hofstra Co., 123 Okla. 3, 251 P. 745; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 49 L. Ed. 972; International Silver Co. v. Rogers (N. J. Eq.) 67 Atl. 105. This rule is recognized by practically every court in the land. The fact that confusion results in the use of a name is not sufficient to warrant an injunction, nor

is it sufficient that damage results. But it is the manner of the use, and not the use itself that is obnoxious to the law.

"There seems to be no difference in the use of a name, and its use in connection with a company or corporation. It is dishonesty in its use that is condemned, and not the use itself. Howe Scale Co. v. Wyckoff et al., supra. In the instant case, an attempt is made to use the word 'company,' when no other person is connected with the business other than the defendant. This, we think, is some evidence of an intention to deceive, when used under the conditions shown by the record. Wood et al. v. Wood (Ore.) 151 P. 969, supports this contention.

"In that case the use of the words 'realty company,' in connection with one's name, was held subject to injunction as constituting unfair competition; also Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554. Whether courts will enjoin the manner in which one's name is used, has been before the courts of the United States and practically all the states many times. Numerous cases are referred to in the briefs of the parties. Extended discussion of the question with many citations will be found in Seligman v. Fenton (Pa.) 47 A. L. R. 1186-1229, and elsewhere.

"The true test, we think, that finds support almost unanimously, is whether or not the use of the name is made honestly and in good faith, and without any intention of deriving any benefit from the reputation or standard of another having the same name and engaged in the same business, other than the similarity of names. As was said in the case of J. I. Case Plow Works v. J. I. Case Threshing Mch. Co. (Wis.) 155 N. W. 128; 'The legal principles which are controlling here are simply the principles of old-fashioned honesty. One may not reap where another has sown, nor gather where another has strewn.'

"In the instant case the names are not identical, but the similarity of the two names is readily apparent. The rule seems not to be different where the names are similar than where they are exactly alike. Generally speaking, it is the similarity which is likely to deceive or mislead an ordinary unsuspecting customer that will be restrained by injunction, where the other conditions are present."

In the instant case, while Mr. Sanders was testifying in behalf of plaintiff concerning the facts surrounding his organizing the corporation and the purposes sought to be attained, he testified as follows:

"Q. You thought it would be advantageous to use a similar name, did you not? A. We thought it would be advisable at one time to use the same name. Q. You thought that you would get more business by doing that, isn't that right? A. Yes, sir."

It will be observed in the Red Seal Refining Company Case, supra, that the only change made in the name of the corporation was from Red Seal Refining Corporation to Red Seal Refining Company, and in the Flora Case, supra, the change was from Flora Shirt Company to Flora, Carl, Shirt Company, and in the instant case the change is from Home Insulation Company to Home & Building Insulation Company. The further quotation from the Flora Case, supra, is pertinent here:

"Here. Carl M. Flora was the son of the organizer of the original plaintiff company. He knew of the reputation that plaintiff company had always maintained throughout its trade territory; he attempted to go into business individually without the assistance of any other person, and while he had a perfect right to use his own name in that business, the fact that he added to the name the word 'company,' we think, at least tends to show that he intended to derive some benefit from the reputation which that company had obtained, and from the business which it had been transacting. Had there been no other company doing business, no one would doubt the right of Carl M. Flora to do business under the name of the Carl Flora Shirt Company, or to have his name listed in the telephone book, as he was attempting to do under the facts in this case, nor could his right to organize a company be disputed. We think the case at bar comes under the general rule laid down in many of the cases, holding that it is not the use of the name, but the manner in which it is used. So, in this case, from the manner in which Carl Flora was attempting to use his name by connecting it with words identical with the words used in the original company, by so listing it in the telephone book, and by attempting to organize a company, there arises a reasonable presumption that he intended to benefit by the reputation which the original company had. If no such intention existed, we think it a reasonable conclusion that under the record confusion would result, and that customers would be misled by mistaking his name for the name of the original company.

"We fully agree with the statement in many of the cases that no hard and fast rule can be laid down which will govern each case, but each one must be decided largely, if not entirely, upon the facts and circumstances surrounding each individual case."

The conclusion reached by this court in the two cases above cited and quoted from finds support in the following authorities: Charles Broadway Rouss, Inc., v. Winchester Company, 290 F. 463; Sweet Sixteen Co. v.

Sweet "16" Shop, Inc., et al., 15 F. (2d) 920; Minas Company v. Edward C. Minas Co. (Ind. App.) 165 N. E. 84; Liberty Life Assurance Society v. Hera ds of Liberty of Delaware, Inc., et al. (Del. Ch.) 138 Atl. 634. Particularly applicable in the instant case is the case of M. M. Newcomer Co. v. Newcomer's New Store et al., 142 Tenn. 108, 217 S. W. 822. It appears that for a number of years plaintiff was engaged in and doing a large business and was known extensively in its trade territory. M. M. Newcomer, cne of the stockholders, sold h'is interest in the business and incorporated under the name of Newcomer's New Store, and in granting an injunction at the suit of plaintiff the court used the following language:

"The rule is general that a corporation may not adopt as its corporate name a name similar to the trade-name of a person or concern previously engaged 'in a similar business, where its use of that name will have the effect of deceiving or misleading the public. * * * It would seem that the rule is well established that a corporation must not by any artifice deceive the public so that its goods may be sold for those of a person or corporation having a similar trade-name."

Also particularly applicable to the facts in the instant case is the language of the Supreme Court of Minnesota in Yellow Cab Co. v. Cook's Taxicab & Transfer Co., 171 N. W. 269, when this language was used:

"A person may adopt a trade-name, consisting of a combination of words, none of which are capable of exclusive appropriation. Descriptive words may, by long use, become identified with the business of a particular trader, and it is then unfair competition for a subsequent trader to use the same words in connection with a similar business in such manner as to deceive. The fact that the words used are part of a corporate name is not important. The essence of the wrong is deceit, and consists in the representation by the offender that his goods or his business are the goods or business of another."

This question was before the Supreme Court of Florida in Children's Bootery et al. v. Sutker (Fla.) 107 So. 345. It appears that the business was conducted under the style of Children's Bootery. It became bankrupt and its assets, including good will, tradename, etc., were sold and the purchaser continued business under that name, and when the defendant subsequently incorporated under the name of Children's Bootery, he was enjoined from using this name when the court said:

"The selection of a corporate name is largely controlled by those who seek that form of business organization. It is chosen with a view to the business in which the corporation is presently to engage. In assuming its name, a corporation acts at its peril. Its organizers are charged with the duty of selecting a name which will not result in material deception. * * * A corporate name, although derived through authority of the state, cannot be used in a manner which will result in fraud or deception. * * * The grant of a corporate charter by the state can confer no power to perpetrate wrong."

In the light of the foregoing authorities and the testimony of Mr. Sanders himself, one of the incorporators and principal stockholders of plaintiff in the instant case, we can reach no other conclusion than that Sanders and Shaw incorporated under the name of Home & Building Insulation Company with the object uppermost in their minds to profit by the business established and the good will created by the extensive advertising of interveners, and a careful review of the record in this case leads us to the conclusion that the judgment of the trial court was against the clear weight of the evidence. Said judgment is therefore reversed and the cause remanded, with directions to the trial court to grant its permanent 'injunction against plaintiff 'as prayed for in the petition of interveners and the cross-petition of defendant.

McNEILL, C. J., and BAYLESS, BUSBY, and GIBSON, JJ., concur.