**EDWARD C. HOFSTRA CO. et al. v. HOFSTRA MFG. CO.**

No. 15284—Opinion Filed Dec. 21, 1926.

1. **Trade-Marks and Trade-Names—Unfair Competition—Confusing Identity of Business.**

All practices between business rivals which tend to engender unfair competition are odious to the law and will be restrained by the courts. No man will be permitted to make use of signs or tokens which serve to confuse the identity of his business with that of another so as to mislead the public and divert business from his competitor to himself. OK Bus & Baggage Co. v. OK Transfer & Storage Co., 63 Okla. 311, 165 Pac. 136.

**2. Same.**

Everyone has the absolute right to the use of his own name honestly in his own business and has the right to permit its use by a corporation with which he is connected, but the corporation on whom the right is conferred will not be permitted to resort to any artifice in connection with its use so as to induce the public to believe that its products are products of another established company, engaged in a similar business, and rightfully using the same individual's name.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Hofstra Manufacturing Company against Edward C. Hofstra Company et al. Judgment for plaintiff and defendants appeal. Affirmed.

F. E. Riddle, for plaintiffs in error.

Randolph, Haver & Shirk, H. M. Gray, and Biddison & Campbell, for defendant in error.

Opinion by RAY, C. At the suit of Hofstra Manufacturing Company, a corporation, Edward C. Hofstra Company, a corporation, J. W. Sanders and Edward C. Hofstra, plaintiffs in error, were perpetually enjoined from certain practices in advertising and selling certain products manufactured and sold by the Edward C. Hofstra Company. The parties are agreed that the sole question involved is that of unfair competition.

In 1915 Edward C. Hofstra and others organized the Hofstra Fly and Insect Detroying Company, a corporation, for the manufacture and sale of insecticide. Certificates of 55 shares of the capital stock were issued to Edward C. Hofstra in exchange for the formula for its manufacture owned by him, and he was made general manager. The name was later changed to Hofstra Manufacturing Company and the word "Hofstra" was adopted as the trade name for the insecticide. June 6, 1917, Edward C. Hofstra sold to the company all his interest for $300 per share, and retired from the business. He agreed that he would not, for a period of two years, manufacture or sell any insecticide; that he would not use or permit the use of the word "Hofstra" by any other person, firm, or corporation, manufacturing or dealing in any insecticide or rat or mice destroyer compound during the time that the Hofstra Manufacturing Company was engaged in business. The concluding paragraph of the agreement is as follows:

"It is mutually agreed and understood that should the parties of the second part, or either of them, fail, neglect or refuse to perform or abstain from any of the provisions of this contract, as the case may require, that then and in that case the damages to the party of the first part being incapable of computation or calculation are hereby liquidated at the sum of $10,000 which sum said second parties hereby agreed and bind themselves to pay to the party of the first part."

Although plaintiff company has engaged in the manufacture and sale of the insecticide only, it was understood at the time the company was organized that ultimately it would manufacture and sell a complete line of remedies and medicines of the same general class as the insecticide. At the time it commenced business it adopted the name "Hofstra" as a name to designate its products. It made the word "Hofstra" the dominant feature of its advertisements for the purpose of impressing it upon the minds of the public as a distinctive trade-name for its products, and for that purpose expended from $35,000 to $50,000 annually in advertising in leading newspapers and farm journals througnout the country, and in window trims, window strips, display cards, etc. For its cartous, boxes, and containers it adopted and used a color scheme of red, yellow, and black, and on all of them the word "Hofstra" was made prominent and conspicuous. By these methods, aided by its traveling men in 28 states, it built up a business in the name of Hofstra Insecticide of approximately $400,000 annually.

In all of its newspaper and display advertisements the corporate name of the company was made subordinate to the word "Hofstra," which was always printed in larger type for the purpose of identifying the word "Hofstra" with its products in the mind of the general public. The word "Hofstra" had no value, other than as the surname of Edward C. Hofstra, prior to the incorporation of the plaintiff company. Its only value was given to it by the manufacture, sale, and advertisement of the plaintiff company's products. In order to familiarize the public with the name of its product the word "Hofstra" was always used on its containers in connection with its color scheme of red, yellow, and black.

In 1919 Edward C. Hofstra, joined with the defendant J. W. Sanders and others, organized the Edward C. Hofstra Company with its place of business in the 400 block on Main street of Tulsa, being two blocks from the place of business of the plaintiff company. The name "Edward C. Hofstra Co." was placed on its window in small let-

ters and running across the transom in large letters the words "Hofstra Co." It began the manufacture and advertisement and sale of an insecticide and other products. As a trade-mark for its insecticide, it registered with the patent office the name "El Dorado." It entered upon a course of advertising, the extent of which is not made clear by the evidence, and in its advertisements and on the labels upon its boxes and containers for its products, the word "Hofstra" was always printed in large type. In the newspapers they referred to their product as "new Hofstra products," "Hofstra El Dorado Insecticide," "Hofstra Egg Preserver," "Hofstra Foot Ease," etc. It adopted a color scheme for its containers not like, but so nearly similar to, that of the plaintiff company as to mislead the casual observer. This resulted in great confusion among those having business with the two concerns. Mail, express, and freight intended for one was often delivered to the other. Orders for goods, checks in payment, and communications of different kinds intended for one reached the other. In a large number of cases the plaintiff company received complaints of the quality of its products delivered, and, on investigation, it was found that it was the product of the defendant company. In more than one instance the plaintiff company's check was refused payment upon the belief that it was the defendant company's check. Credit reports were made upon one as for the other. The defendant company finally filed a voluntary petition in bankruptcy and attorneys reported the bankruptcy proceeding as that of the plaintiff company. The trade having become so familiar with the word "Hofstra" by plaintiff's extensive advertisement of that word, letters containing orders or checks in payment were often addressed to the "Hofstra" Company.

While the trial court made extensive finding of fact, we think the foregoing is sufficient to show the confusion in trade caused by the common use of the word "Hofstra." The trial court found that the method adopted by the defendant company in the use of the word "Hofstra" as shown by its advertisements, and in connection with the color scheme used by it and the similarity of wording used on its containers and labels, so misled the public as to the source and identity of the product that the trade and public were confused and mistook the goods of the defendant company for the goods of the plaintiff company. We think that finding is fully sustained by the evidence.

It is contended that plaintiff's remedy is one at law to recover the liquidated damages provided in the contract between plaintiff company and Edward C. Hofstra and, therefore, injunction will not lie. No authorities are cited to support this contention. But we think the question is not involved here. The Edward C. Hofstra Company, whose business practices are complained of as unfair competition, was not a party to that contract. No contractual relations exist between the plaintiff company and the defendant company. Edward C. Hofstra Company, a corporation, is in law a distinct person from Edward C. Hofstra, one of its incorporators and officers. The defendant company, as to the question involved here, stands in the same position as if Edward C. Hofstra had never been a stockholder, incorporator, or otherwise interested. Chas. S. Higgins Co. v. Higgins Soap Co. (N. Y.) 39 N. E. 490.

As to the question of unfair competition, we have concluded, after a careful examination of many authorities cited, that the rule laid down and applied by this court in O K Bus & Baggage Co. v. O K Transfer & Storage Co., 63 Okla. 311, 165 Pac. 136, is, in substance, the rule generally adopted:

"All practices between business rivals which tend to engender unfair competition are odious to the law and will be restrained by the courts. No man will be permitted to make use of signs or tokens which serve to confuse the identity of his business with that of another so as to mislead the public and divert business from his competitor to himself."

The finding of the court, fully sustained by the uncontroverted testimony, was, in substance, that the plaintiff corporation was organized with Edward C. Hofstra as manager, for the purpose of the manufacture and sale of a powder which it claimed would kill insects; that the word "Hofstra" was adopted and used as the name of its product; that Edward C. Hofstra sold his interest to the company and disassociated himself from it; that after the company had by a systematic, extensive, and expensive course of advertising, popularized the name and built up a large and lucrative business, the new company, the Edward C. Hofstra Company was organized by Edward C. Hofstra and others for the purpose of engaging in a similar business; that it made the same name, "Hofstra," prominent as the trade name for its products for the purpose of leading the public to believe that its products were the products of the other company, and succeeded in its purpose as above stated. In this we think it brought itself

clearly within the case of O K Bus & B. Co. v. O K Transfer Co. supra.

It is contended that Edward C. Hofstra has the right to use his own name, and it cannot be adopted and used as a trade-mark or trade name to the exclusion of his right to use it. The authorities cited sustain that view. He has the right to confer upon the company or corporation in which he is interested the right to the use of his name, but in so doing he cannot confer the right to adopt and use it in competition with an established concern, rightfully using the same name, and engaged in a similar business in such way as to confuse the identity of their products and thereby divert to itself the business of the other.

The rule was thus stated by Mr. Justice White in Singer Mfg. Co. v. June Mfg. Co., 41 L. Ed. 118:

"Although 'everyone has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. But although he may thus use his name, he cannot resort to any artifice or to do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name'."

In Howe Scale Co. v. Wycoff, Seamans and Benedict, 49 L. Ed. 972, Chief Justice Fuller said:

" * * * But if every man has the right to use his name reasonably and honestly, in every way, we cannot perceive any practical distinction between the use of the name in a firm and its use in a corporation. It is dishonesty in the use that is condemned, whether in a partnership or corporate name, and not the use itself. * * * The question is whether his use is reasonable and honest, or is calculated to deceive. 'It is a question of evidence in each case whether there is false representation or not.'"

—and quoted from an opinion of Mr. Justice Brown in Brown Chemical Co. v. Meyer, 139 U. S. 546, 35 L. Ed. 247, where referring to the cases of injunctions restraining the use of one's own name where fraud upon another was manifestly intended, or where he had assigned or parted with his right to use it:

" These cases obviously apply only where the defendant adds to his own name imitations of the plaintiff's labels, boxes, or packages, and thereby induces the public to believe that his goods are those of the plaintiff."

It is fully shown by the evidence in this case, as found by the trial court, that the name "Hofstra" was made especially prominent in its advertisement and on its boxes and containers in connection with its color scheme so nearly similar to that of the plaintiff company, for the purpose of inducing the public to believe that its goods were the goods of the other company, and in many cases purchasers were misled to the detriment of the plaintiff company.

The contention that the trial court found that no fraud in fact was practiced by the defendant company cannot be sustained. The court's finding was:

"The court concludes as a matter of law that the facts in the case at bar do not constitute fraud and deceit, as that is ordinarily used at the bar, but that the facts show that the public were defrauded and deceived by the goods and advertisements, cartons, boxes and packages of the defendant company."

When the finding is considered in connection with the evidence, and law governing, we think it is clear that is was meant by the language used that while the evidence did not show that any one had actually been defrauded of money, or other things of value, the public had been induced, by the advertisements, cartons, boxes, and packages of the defendant company to believe that its products were the products of the plaintiff. This finding of the court, amply sustained by the evidence, clearly brings the case within the rule announced by this court and the Supreme Court of the United States, as above stated.

It is contended that the decree cannot be justified for the reason that it enjoins the defendant company from advertising and selling its products other than its insecticide, since an insecticide is the only product put out by the plaintiff company. As we understand the decree, the defendants are not restrained from selling or advertising any of its products, including its insecticide, but are enjoined from so advertising its products on its boxes, containers, etc., or otherwise, as to mislead the trade or the public into assuming that its goods are the goods of the plaintiff company.

The right of the defendant company to use its trade-mark "El Dorado" in advertising and selling its insecticide is not prohibited by the decree nor questioned here. It is only by the use of the word "Hofstra" in connection with it so as to appear as "Hofstra's

Eldorado Insecticide," as advertised and used in connection with the color scheme, in imitation of the plaintiff company, so calculated to mislead the public into believing that its goods were that of the plaintiff company, that it finds condemnation in the decree and the rules against unfair competition.

Complaint is made that Edward C. Hofstra and J. W. Sanders, organizers and managers of the defendant company, were included in the injunctive decree. A corporation speaks and acts through and by its officers and managers. It was at their direction that the unfair competition was practiced and it is not made to appear that they suffered any wrongful detriment by being restrained. The only evidence offered by the defendants was that the word "El Dorado" had been recorded as the trade-mark for its insecticide.

We are unable to see any merit in the contention that the decree is not sufficiently specific to settle the issues. The judgment is affirmed.

By the Court: It is so ordered.