SLACK *v.* SUDDOTH.

*(Jackson.* April 29, 1899.)

GOOD WILL. *Not subject of forced sale or transfer, when.*

No forced sale or transfer can be made of a good will, such as that of a partnership of dentists, in a suit to wind up the partnership, when it is based upon professional reputation and standing or upon business connections, although it might be the subject of a voluntary sale.

Case cited: Bank *v.* Bank, 7 Lea, 420.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. STERLING PIERSON, Ch.

L. & E. LEHMAN for Slack.

SMITH & TREZEVANT, for Suddoth.

WILKES, J. Drs. Slack and Suddoth were partners in the practice of dentistry in the city of Memphis for a number of years. They occupied two offices on the second floor of No. 243 Main Street, which they rented or leased year by year. They were equally interested in the business and property of the firm and the partnership was un-

limited as to duration. The subject of dissolution was discussed between them for several months, but no satisfactory conclusion was reached until, on April 30, 1894, complainant notified defendant that the partnership was dissolved. Before doing so, however, or on the day after, he rented another office in the same building and near the head of the stairway, and on the next day after the dissolution he advertised in the daily paper that the partnership was dissolved and he was located for practice in an adjoining room in the same building, and he put his sign up at his office door. Attempts were made between the parties to settle up their business, but they were unsuccessful. Suddoth remained in charge of the old offices and used such of the furniture and instruments as he needed or wished. Slack then filed a bill to wind up the partnership, and he asked that a receiver be appointed to take charge of the lease and property and sell the same, and that he be allowed to start the biddings for the same at $2,000. The defendant answered. The Chancellor appointed a receiver, and directed him to offer the use and rent of the two rooms to both parties for the remainder of the year (about seven months) and to let them go to whichever would indemnify the other against the landlord's rent and give the greatest bonus in addition. He was also to take possession of the personal property and hold it for further orders. Defendant thereupon obtained from one of the Judges of this Court a fiat superseding

the order of the Court below to sell the use of the offices. This was dissolved at the April term, 1895, of this Court and the cause remanded for further proceedings. In the meantime the current rent or lease expired, and defendant himself leased the rooms from the landlord and continued in possession. The Chancellor ordered a reference upon the several features necessary to settle accounts between the parties, and, among other things, the Master was directed to report what leases the partnership had when the suit began and which one of the parties had received the benefit of the same, and how much, if anything, he should pay therefor, and who had paid the landlord's rent, and what damage had accrued to complainant by reason of the supersedeas sued out in this Court. The Clerk reported the facts as already stated and that defendant should pay to the complainant $500 for his interest in the lease, upon the ground that it was valuable, and enabled the holder to appear to the public as the successor of the old and well established firm and procure a re-lease of the property. This was excepted to and exception overruled by the Chancellor, and there was an allowance of $500 in favor of complainant for his interest in the remainder of the rental or lease contract, reciting that it was the value of the "good will" attached to the offices. From this much of the decree the defendant appealed, and this presents the only question before us.

The rental paid the landlord for the rooms under

the lease to the firm was $49 per month, and after the firm dissolved defendant continued to pay this amount of rental, and after the expiration of that lease he rerented at the same rate. It appears that the complainant also tried to rerent the rooms at the same price after the firm lease terminated.

The Chancellor, as well as counsel, have treated the item of $500 as the "good will" of the firm. It is difficult to define what "good will" is. Lord Eldon said that it was simply "the possibility that the old customers will resort to the old place." *Crutwell* v. *Lye,* 17 Vesey, 335; *Moreau* v. *Edwards,* 2 Tenn. Ch., 349. But in *Christian* v. *Douglass,* Johns. Eng. Ch., 174, it was said that this was too narrow a view to take of it, and there it was said that it was every positive advantage acquired, arising out of the business of the old firm, whether connected with the premises where it was carried on, with the name of the late firm, or with any other matter carrying with it the benefit of the business of the old firm. But it is evident that this definition is too narrow when applied to the good will of a partnership to practice a profession, since it leaves out of view the advantage to be gained from the professional standing and reputation of the partners themselves, which constitutes the principal feature of value in such partnerships. Accordingly, it is insisted that there is no such thing as "good will" attaching to professional partnerships. Certainly there can be no forced sale or transfer *in in-*

*vitum* of such good will so far as it is based upon professional reputation and standing, such as arises from the skill of physicians, dentists, attorneys, etc., whatever may be done as to such good will as arises out of location.    Still, in the sense in which Lord Eldon uses the term good will of the premises, there may be an advantage of pecuniary value in occupying premises which have been occupied by skilled professional men, and to which the public has resorted or has been attracted by advertisements, or prior visits or general reputation of prior occupants.    Many persons attracted to the place by the reputation of former occupants might remain no matter who might be in occupancy, and others might leave so soon as it was ascertained they were not occupied by the persons in whom they have professional and personal confidence.

It will be seen from this brief mention what an unreliable, and we might say imaginary, value could be placed upon what is called "good will" in this case.. *Bank* v. *Bank*, 7 Lea, 420.    Certain it is that there was no actual good will between these parties after the dissolution.    On the contrary, they were hostile in their views.

It was not the case of one professional retiring and recommending his successor to his old customers, which is the principal feature in the sales of good will when voluntarily made.    But in this instance the defendant was not recommended by complainant.    On the contrary, he entered immediately

into open and aggressive competition with him. Neither could defendant hope to reap much, if any, advantage from occupying the same quarters, for the complainant, as an active competitor, was hard by in the next room, and as likely to get the old customers, perhaps, as was the defendant. The Clerk and Master and Chancellor evidently fixed the value of this good will, as it is termed, from the circumstance that complainant had expressed a willingness to pay defendant $500 for the use of the offices for the remaining term of seven months unexpired. But it must be evident on the one hand that he might be willing, after having secured his own office adjoining, to pay this sum to have the old offices closed and defendant removed entirely from the premises, and never use the rooms himself, and, on the other hand, defendant did not stand upon an equal footing in bidding for the use of the offices, because if he failed to get them he must go off into some other locality, while, if complainant failed to get them, he had only to step into the next room, and, according to the proof, be as favorably located, if not more so, than in the old offices. The complainant could thus set himself up in the premises of the old firm, and, inasmuch as the defendant had gone out of the building, he might be taken as the successor of the old firm. But defendant could not do this, because complainant was located at his very threshold, to rebut such an inference by the public. We do not think this

offer was any criterion of value of the use of these rooms. It might more properly be said to be complainant's estimate of benefit to be used for closing them up. But we think the principle back of all is that no forced sale or transfer can be made of a good will when it is based upon professional reputation and standing or upon business connections. "Good will" implies something gained by consent, not something realized by force or coercion. We do not mean to hold that "good will" has no value and may not be the subject of a voluntary sale. On the contrary, we think it might be sold and is a valid consideration for a contract, and it has been so held in a number of cases. 8 Am. & Eng. Enc. L., 1372, note 7.

In *Burns* v. *Guy*, 4 East, 190, a contract by a practicing attorney to relinquish his business and recommend his clients to two other attorneys, and that he would not re-enter the practice in certain localities, was held a good contract. So in *Whittaker* v. *Howe*, 3 Beavan, 383. In *Hoyt* v. *Holly*, 39 Conn., 326, there was a similar contract made by a physician with a brother physician, and it was sustained. So in the case of *Warfield* v. *Booth*, 33 Md., 63. In all these cases there was a voluntary sale and an obligation to aid the purchaser or not to enter into competition with him for a certain time or in certain localities. No doubt in this case complainant could have made a valid agreement with defendant for a consideration to leave the old offices

and let him have the advantage of their use, but this was not done.

We are of opinion it was error to allow this item, and it is stricken out. Judgment will be rendered as may be indicated by the result. This may be agreed on, or the Clerk of this Court, in the absence of such agreement, will report the amount. The appellee will pay costs of appeal. Costs of Court below will remain as adjudged by that Court.