ALICE RAINES ROBINSON v. ROBINSON'S, INC.

Western Section.   November 16, 1928.

Petition for Certiorari denied by Supreme Court, March 16, 1929.

Kyser, Allen & Overton, of Memphis, for appellant.
Wilson, Gates & Armstrong, of Memphis, for appellee.

SENTER, J.  The record in this cause contains an elaborate finding of the facts by the Chancellor, and also a supplemental finding of the facts made by the Chancellor in response to the petition of defendant for other and additional findings.  The facts found by the Chancellor, are we think, well supported by a preponderance of the evidence, and the Chancellor so well states the case and the facts that we adopt his findings which are as follows:

"The complainant by her bill herein sought to enjoin the defendant from using the name 'Robinson's, Inc.,' upon the ground of unfair competition; immediately after the filing of the bill the defendant amended its charter so as to change its corporate name to 'Julius Robinson, Inc.,' and thereupon complainant amended her bill so as to pray an injunction restraining the defendant from using that name.  The preliminary injunction was denied.  The material facts are as follows:

"1.  In 1869 James S. Robinson established in the city of Memphis a retail drug business, which, upon his death in 1923, he bequeathed to, and which is now operated by his widow, the complainant herein.  This business was first located at the southeast corner of Madison and Second streets, in the building known as the Messick building; after some years in this location it was moved to the northeast corner of Madison and Second streets to the building then known as the Masonic Temple, where it remained until about twenty or twenty-five years ago when the Masonic Temple was torn down; it was then moved north about 200 or 250 feet to a four story building purchased by Mr. Robinson, where it has since been operated; so that during its entire history of nearly sixty years, this business has been successfully carried on either at

the corner of Madison and Second streets, or at its present location, a short distance north, on Second street between Madison and Court streets.

"2. The business soon acquired an enviable reputation, in the City of Memphis and surrounding territory for the extent, variety and completeness of its stock of drugs; for the skill, care and accuracy in the compounding of doctor's prescriptions; and for its cut-rate prices on patent medicines; it has always been generally regarded as having the best and most complete line of drugs in the city; the compounding of prescriptions has always been its specialty, and one of its slogans has been 'Robinson has it for less.' Prior to 1907 when the Moseley-Robinson and Cox Drug Co., opened a retail store in Memphis there was no other drug store except J. S. Robinson's in Memphis, which bore the name of Robinson in any form, and prior to that year, on its signs, stationery and labels, and in its newspaper advertising, this business was known almost entirely by the name of 'Robinson's'; and the name 'Robinson's' at once suggested the business of J. S. Robinson, and became thoroughly identified in the public mind with it.

"After the Moseley-Robinson Drug Co. came into the field, James S. Robinson began to advertise under the name of 'James S. Robinson, Apothecary,' on his signs, labels and stationery, but without in any manner abandoning the use of the trade name, 'Robinson's.'

"3. James S. Robinson died on July 11, 1923, and bequeathed this business to his widow, the complainant herein; and she has continued to operate it at the same place, under the same name, and in the same business-like manner.

"4. Julius A. Robinson, Jr., first became interested in the wholesale drug business in 1907 as an employee of the Lillybeck Drug Co., afterwards the Ellis-Jones Drug Co., from 1914 to 1917, he managed the 'City Desk' for the Ellis-Jones Drug Co.; and from 1917 to 1926 he had the same position with the Hessig-Ellis Drug Co. These were all wholesale concerns, and his duties were in the office; he was not a graduate pharmacist.

"In 1919 he invested $1500 in a retail drug business run by C. C. Manning at Chelsea and Thomas street; shortly thereafter his brother, Andrew went into the Manning store as an employee, and later in the year acquired an interest in the business. The business was still operated under the name of C. C. Manning. While the business was still operated under this name, they purchased the Chelsea Drug Store at Second and Mill streets; and then Manning ran the store at Chelsea and Thomas streets and Andrew Robinson ran the one at Second and Mill. In 1921 this business was incorporated and operated under the name of Manning-Robinson Drug Co., with Manning as its president and Andrew Robinson as its

secretary and treasurer. Andrew was the general manager of this business, did the 'hiring and firing,' and devoted his entire time and attention to it until 1925 when his health failed.

"5. In 1922, L. G. Doughty, the father in law of Julius A. Robinson, Jr., purchased Manning's stock in the company, and by amendment to its charter the corporate name was changed to Doughty-Robinson Drug Co., and Doughty was elected president, and Andrew continued as secretary.

"Julius A. Robinson, Jr., was the principal stockholder, did the buying; financed the business by endorsing for the company and controlled the policy of the business; but he was not an officer or director, and was not publicly identified with it; up to January 1st, 1926, he remained in the employ of the Hessig-Ellis Drug Co.; on that date he left that company and thereafter devoted his entire attention to the Doughty-Robinson business.

"6. During and after the year, 1922, the Doughty-Robinson Drug Co. purchased several other retail drug stores which were located in different locations of the city; and opened two new ones, the main store in the chain being at Union and Somerville streets; some of these stores were operated at a loss, and some were sold; and as a result of these purchases and sales there remained five of the suburban stores which were operated by the Doughty-Robinson Drug Company in February, 1927. Up to this time some of these stores were operated under their original names such as Chelsea Drug Company, Buntyn Pharmacy, Parkview Hotel, etc.

"7. On February 25, 1927, the charter of the company was amended so as to change the corporate name to 'Robinson's, Inc.' and to authorize and increase in the capital stock from $40,000 to $125,000; and after this time the actual capital was increased from $18,000 to $84,000; Julius A. Robinson is now the owner of $26,000 of this stock; and he, was made the president of the company at this time.

"8. After the change in the corporate name was made, the defendant ordered new stationery, labels, wrapping paper, cartons, etc., in the name of 'Robinson's, Inc.,' and did some newspaper advertising in that name. It had the name of 'Robinson's Inc.,' listed in the telephone directory, in addition to the old name of Doughty-Robinson Drug Company and the names of the original stores. In this connection it is admitted that the telephone listing is important in the drug business, and that much patronage is received over the telephone.

"9. In March, 1927, the complainant took notice of this use by the defendant of the name of 'Robinson's Inc.,' and consulted counsel and on April 21st, formal objection was made to the use by de-

fendant of this name; the usual negotiations between lawyers followed; the defendant offered to change the corporate name so that it would not be objectionable, and suggested several names but none of them were satisfactory, to the complainant. Complainant was invited to suggest a name and suggested that some other surname be used in connection with the name Robinson, such as Craft-Robinson Drug Company or Gardner-Robinson Drug Company, Craft and Gardner being stockholders in the defendant's company, but this suggestion was not acceptable to the defendant. In these negotiations the complainant objected to any name in which the name Robinson was specifically featured, and the defendant insisted upon the right to feature the surname of its president and principal stockholder.

"10. On July 8, 1927, the present bill was filed. While the application for the injunction was pending defendant applied for a further amendment to its charter so as to change its corporate name from 'Robinson's Inc.' to 'Julius Robinson, Inc.'; and upon this change in name being made, the preliminary injunction was denied. Since that time the defendant has carried on the business in the name of 'Julius Robinson, Inc.,' and generally in its advertising has added the words 'formerly Doughty-Robinson Drug Co.'

"11. The change of the name of the defendant's company to 'Robinson's Inc.' resulted in considerable confusion between the established business of James S. Robinson and the defendant's stores; manufacturers and wholesale dealers were confused in many instances as shown by their correspondence; the post office authorities made many mistakes in the delivery of the mail; the Patterson Transfer made mistakes in the delivery of the freight of one concern to the other; in one instance a customer of J. S. Robinson phoned to Robinson's, Inc., to have a prescription refilled, giving the date, the number of the prescription and the name of the physician; and the latter company made the mistake of filling its prescription of that number; and the mistake was not discovered until it was detected by the customer. Many specific instances of confusion are shown in the record, most of them of trivial character, but nevertheless annoying; in most cases this confusion occurred while defendant was operating under the name of 'Robinson's Inc.,' though a number of instances have occurred since the change of name to Julius Robinson, Inc.

"12. Complainant's drug store is a down-town store, and is unique in that its business is confined to the compounding of prescriptions, and its own remedies, and to the sale of drugs, patent medicines and sick-room supplies; it is truly an apothecary shop, and it is said that there is only one other drug store of the kind in the whole United States.

"The defendant's stores, on the other hand, are of an entirely different type; they are neighborhood drug stores, and in addition to drugs and prescriptions they have soda fountains and sell cigars, cigarettes, candies, periodicals, Kodaks and Kodak supplies, fountain pens and such other articles as are commonly carried in what is designated by the defendant as a 'modern' drug store."

The defendant filed its petition for different and additional findings of fact and for a rehearing. This petition is elaborate, covering several pages of the record. The Chancellor in disposing of the petition filed a supplemental finding of facts, in which he specifically considers each of the propositions submitted by petitioner, disallowed all of the propositions submitted except the first, seventh and eighth, and on these the Chancellor supplemented or altered his finding of the facts in the following particulars: Under Item 1 the Chancellor states:

"The facts stipulated are accepted as true and may be treated as a part of the facts of the case. The name 'Julius Robinson, Inc.,' had been determined upon by defendant before the filing of the bill, but complainant was not advised of the fact, and did not agree that the defendant might use this name."

Under the seventh item the Chancellor states:

"Paragraphs 8 and 9 of the original finding of facts will be supplemented so as to show that after the complainant protested against the use by the defendant of the name 'Robinson's Inc.' the defendant cancelled all orders for stationery, labels, cartons. etc., which had not been filled, and continued to use the stationery, labels and cartons, bearing the name 'Doughty-Robinson Drug Co.' Defendant also requested the telephone company not to list it in the name of 'Robinson's Inc.,' but the directory had gone to press, so no change could be made in it."

Under Item 8 the Chancellor states:

"I was in error in stating in paragraph 10 of the original findings of fact, that upon the amendment to the defendant's charter being made, the preliminary injunction was denied. The fact is, that the amendment for the charter had not been made when the application for the injunction was denied, but the defendant had, in its answer, expressed its willingness to make such change in its corporate name as to avoid any possible confusion between its business and complainant's."

We have carefully examined the evidence and exhibits, and are of the opinion that the facts of the case as found by the Chancellor, and as modified by the additional findings of fact as above set forth, are well supported by a preponderance of the evidence.

The Chancellor decreed in favor of complainant, holding that the complainant is entitled to an injunction, and further decreed that complainant is entitled to the exclusive use of the name "Robinson" or "Robinson's" in the retail drug business in Memphis, and that if the defendant wishes to use the name "Robinson" in its corporate name and in its advertising matter, it must use it in connection with some other surname as a prefix; so as to clearly differentiate the defendant's business from that of the complainant's, and thereby prevent any confusion in the public mind by reason of the similarity of the name. The decree closes with the following words:

"It is, therefore, ordered, adjudged and decreed by the court that the defendant, Robinson's Inc., whose corporate name has been changed to Julius Robinson, Inc., be and is hereby forever and perpetually enjoined, restricted and prohibited from using the name 'Robinson's Inc.,' or 'Julius Robinson, Inc.,' or in any other name featuring the name 'Robinson,' that is to say, any name in which the name 'Robinson' is used without a distinguishing surname as a prefix to it, either in its corporate name, in its advertising matter, or its signs, labels, stationery, wrapping paper, or elsewhere. . . ."

From this decree the defendant has appealed to this court and has assigned numerous errors.

The errors assigned which are directed to the finding of the facts as found by the Chancellor are overruled. We deem it unnecessary, and it would but prolong and extend this opinion, to discuss the evidence upon which the Chancellor based his conclusion of fact. As above stated, we have examined all the evidence and the exhibits, and fully concur in the conclusions reached by the Chancellor and as set out in his finding of the facts, and as qualified by his supplemental finding as hereinbefore set out.

Upon the facts as above stated we must determine the questions of law presented by the other assignments of error.

The assignments of error are numerous, and we deem it unnecessary to take up and discuss each of the several assignments separately, since the real question in controversy is, whether under the facts as found by the Chancellor, and in which we concur, the complainant is entitled to the injunctive relief sought? Has the defendant adopted a corporate name that encroaches upon a prior acquired right of the complainant, and such as to introduce unfair compensation, and to deceive the public, or occasion confusion to the detriment of complainant's business?

We have been furnished excellent briefs by both parties, both as to the facts and the law applicable thereto. The authorities cited and relied upon by the respective parties in support of their respective contentions are numerous. However, when the cases and authorities are examined we find but little, if any, disagreement with reference to the general rules and principles applicable to the questions we now have. Whatever of confusion there may appear to be is due to the application of these principles to the facts of the particular case.

Appellant contends that this case, under the facts, comes within the rule that a man's name is his own property, and to which he has the same right of use and enjoyment as he would have to any other species of property; and, in the absence of contract or estoppel, the only restrictions. imposed upon the use of his personal name, either as a firm name under which he is trading, or a corporation name under which, he, as a member of the corporation, is· operating, is that it shall be a reasonable, honest, and fair exercise of such right. In support of the rule ·as above stated appellant relies upon the cases of Fite v. Dorman (Tenn. Chan. App.), 59 S. W., 129; Simmons Medicine Co. v. Mansfield Drug Co., 93 Tenn., 84; Robinson v. Storm, 103 Tenn., 49; Sanford-Day Iron Works v. Enterprise Foundry and Mach. Works, 130 Tenn., 69; Newcomer v. Newcomer's New Store, 142 Tenn., 116, and cases cited.

The above rule does not in any way conflict with the rule announced in Newcomer v. Newcomer's New Store, 142 Tenn., 118, where it is said:

> "The rule is general that a corporation may not adopt as its own corporate name a name similar to the trade-name of a person or concern previously engaged in a similar business, where its use of that name will have the effect of deceiving or misleading the public." (Gramm Motor Truck Co. v. Fisher Motor Co., 30 Ont. L. Rep., 1; British American Tobacco Co. v. British American Cigar Stores Co., 211 Fed., 933, 128 C. C. A., 431; General Film Co. v. General Film Co., 237 Fed., 64, 150 C. C. A., 266; Mobile Transfer Co. v. Schwarz, 195 Ala., 454, 70 S., 640; Bender v. Bender Store, etc., 178 Ill. App., 203; Dyment v. Lewis, 14 Iowa, 509, 123 N. W., 244, 26 L. R. A. (N. S.), 73; Finneys Orchestra v. Finney's Famous Orchestra, 161 Mich., 289, 126 N. W., 198, 28 L. R. A. (N. S.), 458; P. I. Case Plow Works v. J. I. Case Threshing Mach. Co., 162 Wis., 185, 155 N. W., 128.)

Nims on Unfair Competition and Trade-Marks (2 Ed.), 171, states the rule applicable to the use by a corporation where the personal

name of an incorporator is used in the corporate name, in the following words:

"The sum of the whole matter is this: If a plaintiff can demonstrate that the defendant's use of its corporate name is causing unfair competition as against the plaintiff, the defendant must change its name even though it contained the personal name of an incorporator, and inasmuch as affirmative duty to differentiate itself from the plaintiff rests upon the defendant, the failure so to do is an evidence of fraud.

"It has been said that the very fact that a body of associates organizing a company take, as part of the name of the company, the name of one of their number which is the same or nearly the same as that of some rival, who has an established business, in most cases gives rise to a presumption of fraud."

In the Newcomer case, supra, the court quotes with approval the statement contained in the opinion in the case of P. I. Case Plow Works v. J. I. Case Mach. Co., supra, as follows:

"The legal principles which are controlling here are simply the principles of old fashioned honesty. One may not reap where another has sown nor gather where another has strewn. A man may manufacture and sell unpatented articles and use his own name in doing so, but, if after another has previously and rightfully made that name valuable as a trade-name descriptive of the same kind of goods, he has created a property right therein which may not be appropriated by a subsequent manufacturer, even though he bear the same name."

Appellant very earnestly urges that Julius A. Robinson, Jr., because of his long continued employment in the drug business in the City of Memphis, and because he has become identified in the drug business, and because he is the largest individual stockholder in the corporation, has acquired a peculiar property right to use his own name as the corporation name, and that he should not, therefore, be denied this right, and in support of this contention cites the numerous cases and authorities hereinbefore referred to.

Can this contention be sustained under the facts of this case? It appears that Julius A. Robinson, Jr., first became employed in a minor position in the laboratory of the wholesale drug business of the Lillybeck Drug Co., in Memphis, about 1907. His first work in that position was washing bottles; after some years he was promoted to a position in the office of the Lillybeck Drug Co., and from 1914 to 1917 he had charge of the desk known as the "City Desk," and in that capacity he handled the city wholesale accounts. From 1917 to 1926 he held the same or a similar position with the Hessig-Ellis Drug Co., also a wholesale drug company. In 1919, while he was still in the employ of the Hessig-Ellis Drug Co., he became

interested with C. C. Manning and invested $1500 in a retail drug business operated by Manning at Chelsea and Thomas streets, in the City of Memphis, but continued to devote his entire time and attention to his employment with Hessig-Ellis Drug Co. Shortly after he became interested as a partner with C. C. Manning he placed his younger brother, Andrew Robinson, in the Manning store as an employee, and later in the year Andrew acquired an interest in the business. This business was still operated under the name, of C. C. Manning, and while it was so operated they purchased another store, the Chelsea Drug Store, at Second and Mill streets in Memphis, Manning continuing to run the store at Chelsea and Thomas, and Andrew Robinson ran the store at Second and Mill. In 1921 this business was incorporated and operated under the corporate name of "Manning-Robinson Drug Co.," with C. C. Manning as its president and Andrew Robinson as its secretary and treasurer. In 1922 Julius A. Robinson, Jr., procured his father-in-law, L. G. Doughty, to purchase Manning's stock in the corporation, and the charter of the corporation was amended and the name was changed to "Doughty-Robinson Drug Co.," and L. G. Doughty became president, and Andrew Robinson continued as secretary. During and after the year 1922 the Doughty-Robinson Drug Co. purchased several other retail stores, located in different parts of the city of Memphis and opened two new stores. Some of these stores were operated under their original names, such as "Chelsea Drug Co.," "Buntyn Pharmacy," "Parkview Hotel," etc., until February, 1927, when the charter was again amended and its corporate name changed to "Robinson's Inc.," and the capital stock was increased from $18,000 paid in to $84,000 paid in, and of which Julius A. Robinson was the owner of $26,000 of the stock, and he was then made president of the company. He continued in the employ of the Hessig-Ellis Drug Co., until January 1, 1926, and after that time he devoted his attention to the business of the corporation, but did not become an officer or a director until February 25, 1927, when the name of the corporation was changed and the capital stock was increased, and he then became president of the corporation.

It will thus be seen that Julius A. Robinson, Jr., had not become identified as a retail drug store operator, until January 1, 1926, and not as an officer or a director until January, 1927. The business had never been conducted in his name prior to that time, or at least the name Robinson never appeared as an active participant, except Andrew Robinson, until January 1, 1926, and not in fact until February 25, 1927.

Soon after the corporate name was changed to "Robinson's, Inc.," the complainant protested through her attorneys, who took the matter up by correspondence with Julius A. Robinson, Jr., and with

his attorney, protesting against the use of the name "Robinson's, Inc.," or any other name so similar as to occasion confusion between complainant's business and defendant's business, or to make unfair competition. Negotiations continued for some months, and there appears to have been an effort upon the part of Julius A. Robinson, Jr., through his attorney, to adjust the matter by having some other name substituted. These negotiations did not result in an adjustment, and complainant filed the original bill seeking the injunctive relief. After the original bill was filed, the defendant amended the charter so as to change the name from "Robinson's, Inc.," to "Julius Robinson, Inc.," whereupon complainant filed an amended and supplemental bill against the defendant enjoining against using that name for its business.

From an examination of the photographs and advertising matter, made exhibits in the case, it appears that the name "Robinson's, Inc.," was so used as to feature in bold letters the name "Robinson's," and with "Inc." in smaller letters. It also appears from an exhibit in the form of a printed letterhead after the last change was made in the charter, that the word or name "Robinson's" was featured by the name "Julius" preceding "Robinson" being in smaller letters and the letters "Inc." following the name "Robinson" also being in smaller letters. This operated to feature the name "Robinson's."

James S. Robinson, who began business in 1869 under the firm name of James S. Robinson, and continued the business under that name for several years, and afterwards added the word "Apothecary" after the words "James S. Robinson," was generally known as "Robinson's," to the drug trade in Memphis and the territory adjacent. The window signs had the word "Robinson's." During his whole business career in the drug business he never abandoned the word "Robinson's" as a trade name. Under this name he had built up a large retail drug business and his store was recognized as the most reliable strictly drug store in Memphis, and still is. Since his death the complainant has operated the business under the same name. The name "Robinson's" has become thoroughly identified in the retail drug trade in Memphis and territory through the long number of years that it has continued.

After the charter of defendant was amended from "Doughty-Robinson Drug Co." to "Robinson's, Inc.," considerable confusion resulted in the matter of the mail, the deliveries of merchandise, filling prescriptions, etc., and this continued after the name was again changed to its present name of "Julius Robinson, Inc."

This confusion has not been so marked under the name of "Julius Robinson, Inc.," as it was under the name of "Robinson's,

Inc.," but to a greater or less extent there continued to be confusion.

In the matter of selecting a corporate name for a business, a corporation may adopt the name of one of its incorporators, but as well said by Mr. Nims, in his valuable work on Unfair Competition and Trade-Marks (2 Ed.), page 162:

> "Personal names, like ones parents, are not of ones own choosing; but a corporate name is chosen by the incorporators themselves; hence it is in their power to make it what they will. That being the case, their rights arising from its possession are less important and their responsibility for its use is greater than in the case of their own personal name. . . .
>
> "Incorporators of a company choose a name at their peril. They will be presumed to know the names under which the probable, existing competitors of the new company are doing business. The choice of a name colorably similar to that used by a competitor, is evidence of fraud, especially if it is likely that the new corporation will profit by the confusion that will result from the similarity between its names and that of a competitor."

It is also significant that as long as James S. Robinson lived, the defendant did not assume to use the word "Robinson's," in its firm or charter names without a prefix of another surname to distinguish it clearly from the business of James S. Robinson. As above pointed out, Julius A. Robinson was not identified with the retail drug business in a personal sense, or individual sense, until the charter of the corporation was amended and its name changed to "Robinson's, Inc."

On the question of the right of one to use his own name in a mercantile business, or other business, our Supreme Court, in the case of Sanford-Day Iron Works v. Enterprise Foundry & Mach. Works, 130 Tenn., 668, said:

> "It has been stated as a general proposition of law that every man has the right to use his own name in his own business, even though someone else of the same name has previously been engaged in a similar business under that name. (Holloway v. Holloway, 13 Beav., 209; Burgess v. Burgess, De. D. M. & G., 896-903; Brown Chemical Co. v. Myer, 139 U. S., 540, and other cases.)"

But the court in the same opinion further said:

> "This rule, however, has been much qualified, and recent cases, while conceding its general application, are uniform to the effect that one's own name must not be used as an artifice to mislead the public as to the identity of the business or corporation, or the article produced. The business of another

who first lawfully selected his trade-name and produced an article which is identified by some such name cannot be thus unfairly diverted. This court so held in the well-considered case of Robinson v. Storm, supra. The Supreme Court of the United States has frequently so held. (Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S., 267, 52 L. Ed., 481; Herring-Hall-Marvin Safe Co. v. Halls Safe Co., 208 U. S., 554, 52 L. Ed., 616; Brown Chemical Co. v. Meyer, 139 U. S., 540, 35 L. Ed., 247, and other cases reviewed in these citings). The state courts are uniformly in accord. See note to Morton v. Morton, as reported in 1 L. R. A. (N. S.), 660 and note to Aetna Mill & Elevator Co. v. Cramer Milling Co., reported in 28 L. R. A. (N. S.), 934.''

In M. M. Newcomer Co. v. Newcomer's New Store, supra, numerous cases and authorities are cited and quoted in part in support of the general rule as announced in that case. When we compare the facts of this case to the facts of the Newcomer case we find considerable similarity, and we think that this case is controlled by the decision of that case.

Without further elaboration, we are constrained to reach the conclusion that there was no error in the decree of the Chancellor in making perpetual the injunction against the defendant's use of its present corporate name.

There remains the further question with reference to that portion of the decree which holds that the defendant should use another surname as a prefix to the name ''Robinson's,'' if the word ''Robinson's'' is to be used by the defendant at all. We think there was no error in this holding by the Chancellor. If the complainant has acquired a special property right in the trade-name ''Robinson's,'' and we think she has for the reasons hereinbefore set forth, if the defendant desires to use the name ''Robinson's'' at all in its corporate name, it should be so used as to clearly distinguish it from the business of complainant. If the defendant desires to retain the name ''Robinson'' or ''Robinson's'' as a part of its corporate name, it should be required to use another surname as a prefix which would make it readily distinguishable from the trade-name of complainant.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. Appellant and sureties on the appeal bond will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.