Sarah D. GRACEY, Executrix of the
Estate of Hugh C. Gracey, Sr.,
Plaintiff–Appellee,

v.

John K. MADDIN, Jr., Michael Miller,
and Malcolm L. McCune, Individually
and as Partners in the partnership for
the practice of law known as Gracey,
Maddin, Miller & McCune, Defendants–
Appellants.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 25, 1989.

Application for Permission to Appeal
Denied by Supreme Court
April 3, 1989.

C.J. Gideon, Jr., North & Gideon, Nashville, for plaintiff-appellee.

Tyree B. Harris, Harris & Harris, Nashville, for defendants-appellants.

## OPINION

LEWIS, Judge.

Defendants have appealed from the Chancellor's granting of plaintiff's motion for summary judgment and entering judgment prohibiting defendants' use of a former law partner's name "in any form or fashion."

The material facts, which are undisputed, are as follows:

Hugh C. Gracey, Sr. was a widely respected lawyer who practiced law in various partnerships for more than thirty-five years in Davidson County, Tennessee.

On 23 April 1974, Mr. Gracey entered into a general partnership Agreement with John K. Maddin, Robert H. Cowan, Richard D. Bird, Michael Miller, and Don R. Binkley. The partnership was known as Gracey, Maddin, Cowan and Bird.[1] This part-

---

[1] After the execution of the general partnership agreement on April 23, 1974, the following original partners and later admitted partners left the law firm:

Mr. Hugh Gracey, Sr. retired December 31, 1982, and died on February 15, 1984.

Robert Cowan, an original partner, left the firm in early 1987.

Richard Bird, an original partner, left in early 1987.

Don Binkley, an original partner, died January 3, 1980.

Hugh Gracey, Jr. was admitted to the firm on January 1, 1980, and left the firm December 31, 1986.

Jim Wickel was admitted January 1, 1981, and left July 15, 1984.

Patrick Ruth was admitted to the firm on January 1, 1983, and left March 13, 1986.

Barry Howard was made a partner January 1, 1984, and left December 31, 1986.

nership succeeded the firm of Gracey, Buck, Maddin and Cowan. On the same day "a side agreement was entered into between the partnership and Mr. Hugh Gracey, Sr."

Mr. Gracey retired from the firm of Gracey, Maddin, Cowan and Bird on December 31, 1982. He died on February 15, 1984.

In 1977, Mr. Gracey determined that he wished to reduce his trial practice and, to that end, entered into an agreement with the defendants. This agreement was neither dated nor signed, but the parties agree it was in full force and effect and is as follows:

Effective with the calendar year 1978, as a replacement for the prior "side-agreement" between Hugh C. Gracey, Sr., and the firm, Gracey, Maddin, Cowan & Bird, and as an amendment to the general partnership agreement as respects the relationship of Mr. Gracey, Sr. to the firm, the arrangement between Mr. Gracey, Sr. and the firm [is] as follows:

Hugh C. Gracey, Sr. (Mr. Gracey) will participate in the net distributable income of the partnership, his percentage being fixed at twelve (12%) percent for the calendar year 1978, eleven (11%) percent for 1979, and ten (10%) percent for each of the years 1980, 1981, and 1982. This arrangement assumes reasonable activity on Mr. Gracey's part, and is entered into with the understanding that there will be a pro-rata reduction of those percentages as partners are added to the firm, and that this represents a buy-out arrangement of all interests which Mr. Gracey has in the firm, leaving no residual or partnership income or assets to his widow or estate beyond the year involved, should his death occur within this period of time. The terms of the arrangements between Mr. Gracey and the firm for the calendar years 1983 and beyond, are to be determined and decided by and between him and the then partners in the firm.

William Tate was admitted January 2, 1987, and left March 31, 1987.

The general partnership agreement provided that "the name of the law partnership created hereby shall be GRACEY, MADDIN, COWAN, & BIRD." The agreement further provides that "[t]he death ... of a partner shall not terminate the Agreement, but the same shall continue in full force and effect" and "[u]pon a death the remaining Partners agree to reconstitute themselves as a continuing partnership...."

The 1977 agreement, which replaced the "side agreement" between Mr. Gracey and the partnership, provides that for the consideration of a declining percentage of the net income for the years 1978 through 1982 Mr. Gracey agrees to continue "reasonable activity" and to sell to the partnership "all interests which Mr. Gracey has in the firm."

In order to determine the propriety of the Chancellor's granting of the summary judgment, our inquiry is three-fold. First, do the remaining partners acquire the right to continue the use of the name of a retiring or deceased partner upon his retirement or death?

"A corporate or business name is generally held to be a capital asset." 6 W. Fletcher, *Cyclopedia of The Law of Private Corporations,* § 2415 (Rev.Perm. ed. 1975). The partnership name is normally partnership property and an asset of the partnership. Partnership property is "all assets applicable to the payment of the partnership debts." 59A Am.Jur.2d **Partnership** § 333 (1987).

The name by which patrons of a business associate their past satisfaction upon which they found their anticipation for future satisfaction is an element of good will. The name may be of the place of business, the name under which the business is conducted, or the brand or the tradename of the article produced. In the case of a brand or tradename, there may be no other element of good will, yet rights therein undoubtedly form what is generally known as good will. In fact, the name and the good will are

The present name of the law firm is Gracey, Maddin, Miller and McCune.

often one and the same thing. But in some instances it is held that if the name consists in part of the owner's personal name and has not become impersonalized, it does not form such a part of the good will as will be included therein impliedly.

38 Am.Jur.2d **Good Will** § 6 (1968).

"It is well settled, both in England and this Country, that the firm name of a co-partnership, *as distinguished from the name of an individual,* is an element of the partnership enterprise, a substantial asset thereof, and passes with a sale of the partnership property and good will." *Twin City Brief Printing Co. v. Review Publishing Co.,* 139 Minn. 358, 166 N.W. 413, 415 (1918) (emphasis added).

"The general rule is that a professional partnership the reputation of which depends on the individual skill of the members, such as partnerships of attorneys or physicians, has no good will to be distributed as a firm asset on its dissolution." Annot., 44 A.L.R. 524 (1926).

In *Slack v. Suddoth,* 102 Tenn. 375, 52 S.W. 180 (1899), a dental partnership between two dentists was involuntarily dissolved. The Court was mainly concerned with whether the premises where the partnership was located was a part of the good will. However, the Court did discuss the reputation and professional standing of a partner as a part of the good will. The Court, in part, stated:

[I]t was every positive advantage acquired, arising out of the business of the old firm, whether connected with the premises where it was carried on, with the name of the late firm, or with any other matter carrying with it the benefit of the business of the old firm. But it is evident that this definition is too narrow when applied to the good will of a partnership to practice a profession, since it leaves out of view the advantage to be gained from the professional standing and reputation of the partners themselves, which constitutes the principal feature of value in such partnerships. Accordingly, it is insisted that there is no such thing as "good will" attaching to

professional partnerships. Certainly there can be no forced sale or transfer *in invitum* of such good will so far as it is based upon professional reputation and standing, such as arises from the skill of physicians, dentists, attorneys, etc., whatever may be done as to such good will as arises out of location.

102 Tenn. at 378–379, 52 S.W. 180.

Further:

"Good will" implies something gained by consent, not something realized by force or coercion. We do not mean to hold that "good will" has no value and may not be the subject of a voluntary sale. On the contrary, we think it might be sold and is a valid consideration for a contract, and it has been so held in a number of cases.

102 Tenn. at 381, 52 S.W. 180 (citations omitted).

Thus a distinction arises regarding the transfer of the good will generally and the transfer of good will associated with the name of an individual in a professional partnership when the individual's name is part of the professional partnership name.

We have found no case, nor have we been cited to one, which definitively answers the question of whether in a professional partnership an individual partner's name is an asset of the partnership which the partnership may, without the individual's consent, continue to use after the individual partner has left the partnership through retirement or death.

The issue is a difficult one to resolve. Does the partnership, in the absence of some agreement from the individual or his estate, nevertheless own a named partner's individual name as part of the good will of the partnership?

In *In re Brown,* 242 N.Y. 1, 150 N.E. 581 (1926), Judge Cardozo addressed the issue of whether an accounting was due to a deceased partner where the survivors continued the partnership at the same place and in the same name.

In his discussion, Judge Cardozo pointed out "the distinction between names purely personal or individual, and names that had

acquired, through the incrustations of time, a veneer of associations, artificial and impersonal." *In re Brown* 150 N.E. at 583.

We find this distinction applicable to the instant case. The name "Gracey" is that of an individual and it has not gone through a metamorphosis where it has "practically become an artificial one, designating nothing but the establishment." *Id.* (citations omitted).

■ We conclude under the facts and circumstances here that the use of Mr. Gracey's name in the partnership of Gracey, Maddin, Cowan and Bird did not strip it of its individuality.

We recognize an individual's name may become so associated with a partnership as to strip it of its individuality, thereby transforming it into part of the partnership good will. However, since we conclude no such alteration occurred here, the partnership does not have the right, in the absence of a voluntary agreement between Mr. Gracey or his estate and the partnership, to the continued use of Mr. Gracey's name.

Our second inquiry is: Does a person have a property right in his name that he can sell or assign to third persons?

Rule 8 EC 2-11, Rules of the Supreme Court,[2] allows a "bona fide successor" firm to continue to use a retired or deceased partner's name "if the use of the name is authorized by law or by contract, and if the public is not misled thereby."

In *State ex rel. Elvis Presley v. Crowell,* 733 S.W.2d 89 (Tenn.App.1987), Judge Koch, writing for the Court, stated:

The appellate courts of this State have had little experience with the right of publicity. The Tennessee Supreme Court

has never recognized it as part of our common law or has never undertaken to define its scope. However, the recognition of individual property rights is deeply embedded in our jurisprudence. These rights are recognized in Article I, Section 8 of the Tennessee Constitution and have been called "absolute" by the Tennessee Supreme Court. This Court has noted that the right of property "has taken deep root in this country and there is now no substantial dissent from it."

The concept of the right of property is multi-faceted. It has been described as a bundle of rights or legally protected interests. These rights or interests include: (1) the right of possession, enjoyment and use; (2) the unrestricted right of disposition; and (3) the power of testimonial disposition.

In its broadest sense, property includes all rights that have value. It embodies all the interests a person has in land and chattels that are capable of being possessed and controlled to the exclusion of others. Chattels include intangible personal property such as choses in action or other enforceable rights of possession.

Our courts have recognized that a person's "business," a corporate name, a trade name and the good will of a business are species of intangible personal property.

Tennessee's common law thus embodies an expansive view of property. Unquestionably, a celebrity's right of publicity has value. It can be possessed and used. It can be assigned, and it can be the subject of a contract. Thus, there is ample basis for this Court to conclude

**2.** EC 2–11. The name under which a lawyer conducts his or her practice may be a factor in the selection process. The use of a trade name or an assumed name could mislead laypersons concerning the identity, responsibility, and status of those practicing thereunder. Accordingly, a lawyer in private practice should practice only under a designation containing his own name, the name of a lawyer employing him, the name of one or more of the lawyers practicing in a partnership, or, if permitted by law, the name of a professional legal corporation, which should be clearly designated as such. For many years some law firms have used a firm name retaining one or more names of deceased or retired partners and such practice is not improper if the firm is a bona fide successor of a firm in which the deceased or retired person was a member, if the use of the name is authorized by law or by contract, and if the public is not misled thereby. However, the name of a partner who withdraws from a firm but continues to practice law should be omitted from the firm name in order to avoid misleading the public.

that it is a species of intangible personal property.

*Id.* at 96–97 (citations omitted).

■ A person has a property right in the use of his name which he may assign.[3]

■ This brings us to our third inquiry: whether under the agreement entered into between Mr. Gracey and the partners Mr. Gracey assigned to the remaining partners the right to use his name after his retirement and/or death.

The retirement provision of the general partnership agreement provides in pertinent part:

> The firm may continue to use the retired Partner's name in the name of the Partnership, on letterheads, directory listings, etc. either as "active" or "of counsel" as may be determined appropriate by the PARTNERS.

This provision contemplates the use of a partner's name during retirement only. He may be listed as "active" or "of counsel." It goes without saying that a deceased partner may be listed as neither.

The 1977 agreement which replaced the "side agreement" provides that for the consideration of a declining percentage of the net income for the years 1978 through 1982, Mr. Gracey agreed to sell to the partnership "all interests which Mr. Gracey has in the firm."

The 1977 agreement goes on to provide that "[t]he terms of the arrangements between Mr. Gracey and the firm for the calendar years 1983 and beyond, are to be determined and decided by and between him and the then partners in the firm." The 1977 agreement covers only the years 1978 through 1982. The partners and Mr. Gracey agreed that for the years 1983 forward the terms "are to be determined and decided by and between" Mr. Gracey and the partners. So far as this record shows, no agreement was made for the years 1983 forward.

If the use of Mr. Gracey's name is covered by "all interests which Mr. Gracey has in the firm," he assigned the use of his name for the years 1978 through 1982. For the years 1983 forward, the parties agreed they would enter into further negotiations.

We agree with the Chancellor that "[a] strong inference arises from the fact that although provisions for the use of the name are made in the event of retirement, there is no comparable provision in the event of death."

The judgment of the Chancellor in granting plaintiff's motion for summary judgment is affirmed with costs assessed to defendants and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P.J., concurs.

KOCH, J., dissents in separate opinion.

KOCH, Judge, dissenting.

This appeal involves the right of a law partnership to include the surname of a retired partner in its firm name after the partner's death. The majority has determined that the firm cannot continue to use its former partner's name. I cannot concur.

The majority's opinion is discordant with the long-standing practice of lawyers in Tennessee. It ignores Tenn.S.Ct.R. 8, DR 2-102, and it misapprehends the significance of the dealings between the parties. If permitted to stand, it will open a Pandora's box, spreading mischief from Mountain City to Memphis. I would hold that a

---

**3.** Subsequent to the events which brought about this controversy the General Assembly enacted Chapter 945, § 3, Pub.Acts, 1984, which has been codified as Tenn.Code Ann. § 47–25–1103, and is as follows:

> **Property right in use of name, photograph, likeness.**—(a) Every individual has a property right in the use of his name, photograph, or likeness in any medium in any manner.

> (b) The individual rights provided for in subsection (a) shall constitute property rights and shall be freely assignable and licensable, and shall not expire upon the death of the individual so protected, whether or not such rights were commercially exploited by the individual during the individual's lifetime, but shall be descendible to the executors, assigns, heirs, or devisees of the individual so protected by this part.

lawyer's consent to the use of his or her surname as part of a law firm's name carries with it, in the absence of a contrary agreement, consent to the law firm's continuing use of the name after the lawyer's death. I would also find that the plaintiff is not entitled to a summary judgment because she has not shown that she is entitled to a judgment as a matter of law.

## I.

Hugh C. Gracey, Sr. was a well-respected lawyer who practiced law in Nashville for thirty-five years prior to his death in 1984. On April 23, 1974, Mr. Gracey and five other lawyers with whom he had practiced for a number of years executed two agreements in order "to adjust to new conditions and a changing awareness of the implications of [their] prior agreement." The first was a new partnership agreement; the second, an agreement specifically relating to Mr. Gracey's relationship with the new partnership.

The new partnership agreement provided that the name of the law firm would be "Gracey, Maddin, Cowan & Bird." It stated that the partnership would continue for "an indefinite period" and contained a survivorship feature providing for the continuation of the partnership notwithstanding the death, resignation, withdrawal, retirement or expulsion of a partner.

The agreement permitted a partner to retire voluntarily at the age of sixty and required retirement at the age of sixty-seven. It allowed retired partners to remain affiliated with the firm and provided that "[t]he firm may continue to use the retired Partner's name in the name of the Partnership, on letterheads, directory listings, etc. either as 'active' or 'of counsel' as may be determined appropriate by the [partners]."

The agreement also provided that the partnership would not automatically dissolve when a partner died. It required the partnership to pay over to the partner's estate an amount representing the value of the partner's vested interest in the firm at the time of his death. It did not contain a provision concerning the firm's continued use of a deceased partner's surname as part of the firm name.

The new partnership agreement expressly incorporated the separate agreement between Mr. Gracey and the firm and provided that the separate agreement would control where its terms were inconsistent with those of the partnership agreement. The parties agreed that the new agreement would "be binding upon and inure to the benefit of the parties, their personal representatives, heirs and assigns."

The separate agreement between the firm and Mr. Gracey, signed contemporaneously with the new partnership agreement, was intended to "provide some economic security" to Mr. Gracey between the ages of 60 and 70. It provided that Mr. Gracey, who was then 61 years old, would not be required to retire until he reached the age of 70. It guaranteed him a minimum annual income as long as his activities brought in fees to the firm, and it provided slightly more favorable disability and death benefits.

The parties anticipated that Mr. Gracey's role at the firm would continue in much the same way it had in the past. He was to continue to act as the "clearing house" for the general insurance defense and subrogation files. He was expected to review each file, to select those he would handle himself, and then to assign the remaining files equitably among the firm's trial counsel.

In 1977, Mr. Gracey decided to reduce his practice. Accordingly, he negotiated a new "side agreement" to replace the original separate agreement entered into in April, 1974. The new agreement took the form of a "buy out" in which Mr. Gracey agreed to sell all his partnership interest back to the firm in return for the payment of defined percentages of the firm's net distributable income from 1978 through 1982.

The firm admitted three additional partners, including Mr. Gracey's son, between 1980 and 1982. Mr. Gracey continued to make his draws in accordance with the new side agreement and was fully retired from the firm on January 1, 1983. He drew no further income and, in accordance with the

new side agreement, had no further interest in the firm after 1982.

Mr. Gracey died on February 3, 1984. The years following his death saw a great personnel upheaval in the firm. The firm had nine partners when Mr. Gracey died. One junior partner left in 1984. Three more junior partners, including Mr. Gracey's son, withdrew in 1986 to form their own firm. Two of the original partners left the firm in 1987, and another junior partner left the firm the same year within months after being admitted into the partnership. The three remaining partners, two of whom were original partners, continued the firm under the name of "Gracey, Maddin, Miller & McCune."

In July, 1987, Mrs. Gracey, acting as the executrix of her husband's estate, filed an action pursuant to the Personal Rights Protection Act of 1984 [Tenn.Code Ann. § 47–25–1101 through 1108 (1988)]. She sought to enjoin the firm from continuing to use Mr. Gracey's name as part of the firm name on the ground that Mr. Gracey "did not, at any time in his life, assign or license the use of his name following his death."

Both parties moved for summary judgment based on the partnership documents and other stipulations and admissions in the defendants' answer. The trial court[1] granted Mrs. Gracey's motion for summary judgment and enjoined the firm from continuing to use Mr. Gracey's name.

## II.

### Use of Mr. Gracey's Name

It is commonplace for the surviving partners of a law firm to continue to use a firm name containing the name of a deceased partner. *Phillips v. "Cahill Gordon & Reindel"*, 109 Misc.2d 656, 440 N.Y.S.2d 809, 810 (1981). The death of a name partner may not substantially alter the nature of a law firm's practice, and thus requiring a firm to change its name every time a name partner dies imposes a burden on the

firm greatly disproportionate to the possible benefits to the public. *In re Professional Ethics Advisory Comm. Opinion 475*, 89 N.J. 74, 444 A.2d 1092, 1103 (1982).

Today, a law firm's name is viewed as little more than an institutional description. It does not carry with it the implication that anyone bearing a surname corresponding to the names in the firm title is available to render professional services. *New York Criminal and Civil Courts Bar Ass'n v. Jacoby*, 61 N.Y.2d 130, 460 N.E.2d 1325, 1327, 472 N.Y.S.2d 890, 893 (1984).

In Tennessee, as in other states, using names of deceased or retired partners to identify law firms is common practice. The listings for lawyers practicing in Tennessee contained in 6 *Martindale–Hubbell Law Directory* 1720B–2016B (120th ed. 1988) reveal that there are 118 law firms in Tennessee whose firm name or description contains the name of one or more deceased partner. Of these, 61 firms[2] include the surname of at least one deceased partner as part of their firm name. Three Tennessee firms have firm names made up entirely of the surnames of deceased partners.

The custom of continuing to use a deceased partner's surname in a law firm's name is so deeply rooted in Tennessee that it has received the imprimatur of Tennessee's version of the Code of Professional Responsibility. Tenn.S.Ct.R. 8, DR 2–102(B) provides, in part, that

if otherwise lawful, a firm may use as, or continue to include in, its name the name or names of one or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession.

Likewise, Tenn.S.Ct.R. 8, EC 2–11 provides

For many years some law firms have used a firm name retaining one or more names of deceased or retired partners and such practice is not improper if the firm is a bona fide successor of a firm in which the deceased or retired person was a member, if the use of the name is

---

**1.** The Chief Justice appointed a special judge to hear the case after the defendants filed their answer.

**2.** These firms include the law firm with which the special judge who tried this case is affiliated.

authorized by law or by contract, and if the public is not misled thereby. However the name of a partner who withdraws from a firm but continues to practice law should be omitted from the firm name in order to avoid misleading the public.

The Tennessee Supreme Court has the constitutional prerogative to promulgate rules governing admission to the bar and the practice of law in this state. *In re Tennessee Bar Ass'n*, 532 S.W.2d 224, 228–29 (Tenn.1975); *In re Petition for Rule of Court Activating, Integrating and Unifying the State Bar of Tennessee*, 199 Tenn. 78, 83, 282 S.W.2d 782, 784 (1955); *Cantor v. Brading*, 494 S.W.2d 139, 143 (Tenn.Ct. App.1973). Thus, the disciplinary rules contained in the Code of Professional Responsibility adopted by the Tennessee Supreme Court have the force and effect of law. *See Tennessee Dep't of Human Servs. v. Vaughn*, 595 S.W.2d 62, 63 (Tenn. 1980); *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn.1980).

Of course, persons have the right, within certain bounds not germane here, to control the commercial exploitation of their name. *M.M. Newcomer Co. v. Newcomer's New Store*, 142 Tenn. 108, 116, 217 S.W. 822, 825 (1919); *State ex rel. Elvis Presley Int'l Memorial Found. v. Crowell*, 733 S.W.2d 89, 96–97 (Tenn.Ct.App.1987); *Robinson v. Robinson's Inc.*, 9 Tenn.App. 103, 114–15 (1928). However, this right of control includes within it the power to authorize others to use the name during life and thereafter.

Assuming for the sake of discussion that there is some proof that the defendants are commercially exploiting Mr. Gracey's name, the question to be answered is whether Mr. Gracey consented to his law firm's continued use of his surname when he signed the partnership agreement in 1974 as a name partner. I believe he did.

Mr. Gracey's relationship with his law firm is governed by the 1974 partnership agreement and the two side agreements. Like any other contract, these agreements should be read in light of the law existing at the time of their execution. DR 2–102(B), having been promulgated by the Tennessee Supreme Court in 1970[3], became part of the parties' agreement. *Robbins v. Life Ins. Co.*, 169 Tenn. 507, 510, 89 S.W.2d 340, 341 (1936); *Cary v. Cary*, 675 S.W.2d 491, 493 (Tenn.Ct.App.1984). Thus, when the parties signed the new partnership agreement in 1974, they should be held to understand that they were authorizing the firm to use their names as allowed by DR 2–102(B).

When Mr. Gracey signed the partnership agreement in 1974, he expressly agreed that his surname would become part of the firm's name and that the firm would continue indefinitely without being dissolved by the death or retirement of any of the partners. While the agreement is silent concerning the continuing use of a partner's name after his or her death, Mr. Gracey reserved no right to limit the firm's use of his name after his death.

The partnership agreement's continuation provisions put Mr. Gracey on notice that the firm would, most likely, continue after his death. This, coupled with the incorporation of DR 2–102(B) into the agreement, supports the conclusion that when Mr. Gracey executed the partnership agreement in 1974, he authorized the firm to continue to use his name.

The majority's decision appears to be heavily influenced by decisions holding that a professional partnership's name as no value as good will or as a capital asset upon dissolution of the partnership. *Hunt v. Street*, 182 Tenn. 167, 172–73, 184 S.W.2d 553, 555 (1945); *Slack v. Suddoth*, 102 Tenn. 375, 378–79, 52 S.W. 180, 181–182 (1899). While this may be a correct statement of the common law rule recognized in Tennessee and other jurisdictions, it has no application in this case.

**3.** *See* Rule 38 of the Supreme Court of Tennessee, 223 Tenn. 793–94; *In re Petition for Rule of Court Governing Lawyer Advertising*, 564 S.W.2d 638, 641 (Tenn.1978). Rule 38 was rescinded and re-enacted as Tenn.S.Ct.R. 8 on January 28, 1981. *See* Tenn. Decisions 609–614 S.W.2d at XXVII, LXIV; Armstrong, *Regulation of the Bar in Tennessee*, 53 Tenn.L.Rev. 723, 738 (1986).

We are not dealing here with a dissolved partnership. The law firm is still very much in existence. The question facing us does not involve the theoretical value of a partnership's name or the right to use a dissolved partnership's name. Rather, the question before us relates to a continuing partnership's right to continue to use its own name after the death of one of its name partners.

If any common law rule is applicable in this case, it is the rule permitting the surviving members of a partnership to continue to use the firm name. Unlike the common law rule referred to in the majority opinion, this rule applies to professional partnerships. Thus, the Supreme Court of New York, Appellate Division, found that the surviving partners of a law firm could continue to use a firm name incorporating the surnames of two deceased partners. *Mendelsohn v. Equitable Life Assur. Soc.,* 178 Misc. 152, 33 N.Y.S.2d 733, 734 (App. Div.1942). DR 2–102(B) embodies this common law rule and makes it applicable to law partnership agreements. Thus, I would find that the surviving partners of Gracey, Maddin, Cowan and Bird have the right to continue to use Mr. Gracey's name in any manner consistent with the Code of Professional Responsibility.

### III.

#### The Summary Judgment

I have a second disagreement with the majority's opinion. Mrs. Gracey's complaint embodies a single legal theory—that the defendants are violating Tenn.Code Ann. § 47–25–1101 through 1108 by continuing to use her husband's name without permission. As a condition to obtaining a summary judgment, Tenn.R.Civ.P. 56.03 requires Mrs. Gracey to demonstrate that she is entitled to a judgment as a matter of law. She has failed to do so.

In order to obtain the injunction authorized by Tenn.Code Ann. § 47–25–1106(a), Mrs. Gracey must prove that the defendants' conduct is proscribed by Tenn.Code Ann. § 47–25–1105(a). This section provides that

Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for the purposes of advertising products, merchandise, goods, or services, or for the purpose of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent ... or in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, shall be liable in a civil action.

The defendants conceded that they continued to use Mr. Gracey's surname in their firm name in the manner permitted by Tenn.S.Ct.R. 8, DR 2–102(B). However, they did not concede, and Mrs. Gracey did not prove, that they were knowingly using Mr. Gracey's name for the purpose of advertising services or the purchase of services. Mrs. Gracey cannot be entitled to a judgment as a matter of law without pointing to some proof establishing this element of her case.

Sensing the deficiency in the proof supporting Mrs. Gracey's motion for summary judgment, the trial court based its decision on other grounds and specifically stated that it was not relying on the cause of action contained in Mrs. Gracey's complaint. The trial court, in its own words, granted the summary judgment for four reasons:

First, the partnership agreement does not so provide. To the contrary, a strong inference arises from the fact that although provision for the use of the name is made in the event of retirement, there is no comparable provision in the event of death. Secondly, there is a property right involved, the use of which is descendible at common law, see *State ex rel. v. Crowell,* 733 S.W.2d 89, (Ct.App. 1987) and it is the estate of Gracey that benefits from this right. Thirdly, equitable considerations strongly compel this conclusion. If gain is to be realized from the use of the name, such gain should accrue to his estate which will not

profit to any extent, form the continued use of the name of the firm. Fourthly, there is a recognizable right of privacy involved in this matter.

The trial court's conclusions are not supported by the pleadings or by the proof submitted by the parties.

Mrs. Gracey's complaint does not assert a "right of privacy" theory. The failure of the partnership agreement to provide specifically for the continued use of a deceased partner's name raises no controlling inference because DR 2–102(B) must be read as part of the contract. Just as she introduced no proof that the defendants were commercially exploiting Mr. Gracey's name in violation of Tenn.Code Ann. § 47–25–1105(a), Mrs. Gracey also introduced no proof that her privacy was being invaded or that the defendants were deriving "gain" from the use of Mr. Gracey's name.

On the other hand, the record fully supports the defendants' motion for summary judgment for two reasons. First, Mrs. Gracey failed to introduce any evidence tending to establish all the essential elements of the cause of action alleged in her complaint. *Moman v. Walden,* 719 S.W.2d 531, 533 (Tenn.Ct.App.1986). Second, the undisputed proof shows that the firm included Mr. Gracey's surname in its firm name for ten years before Mr. Gracey died. Mr. Gracey received valuable consideration in return for his unrestricted agreement to include his surname as part of the firm name. The firm thus acquired an interest in the continuing use of its own name subject only to the restrictions imposed by DR 2–102(B). There is no proof that the firm abandoned its interest in its own name when it bought out Mr. Gracey's interest in the firm.

Accordingly, I would find, as a matter of law, that Mr. Gracey's execution of the partnership agreement in 1974 amounted to his approval of the firm's continued use of his name in accordance with the Code of Professional Responsibility. Thereafter, the firm acquired an interest in "Gracey" as part of its firm name. Mr. Gracey reserved no right to control the firm's name, and he did not acquire this prerogative when he sold all his interest in the firm back to his partners. The firm is entitled to its name—including Mr. Gracey's surname.

### IV.

For these reasons, I would reverse the judgment of the trial court and remand the case for the entry of a summary judgment in the defendants' favor.